## STATE BRIDGE COMMISSION OF MICHIGAN v. UNITED STATES.

### No. 45745.

Court of Claims.

May 6, 1946.

Harry J. Gerrity, of Washington, D. C., for plaintiff.

Percy M. Cox, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The question presented for decision is whether the United States is liable under an obligation or undertaking implied in fact to compensate plaintiff in the absence of any written lease or other agreement between it and the plaintiff. or express promise to pay either rental or maintenance costs for use of space in a building constructed and maintained in connection with an international bridge at Port Huron, Michigan.

Plaintiff is a public service corporation created by Public Act No. 147, enacted by the legislature of the State of Michigan and approved June 4, 1935, conferring upon plaintiff the power to acquire land and rights of way and other interests in land, by condemnation or otherwise; to construct an international bridge; to contract and enter into agreements with adjoining states and the Dominion of Canada; to issue bonds to the limit of $2,300,-000, to defray the cost of construction, operation and maintenance; to collect bridge tolls; to sue and be sued, and to perform such other acts necessary or incidental to the construction, operation and maintenance of an international bridge to span the St. Clair River and connect the City of Port Huron, State of Michigan, with the City of Sarnia, Dominion of Canada.

By Section 17 of an act of Congress approved August 30, 1935, 49 Stat. 1051, 1067, the State of Michigan, by and through its State Bridge Commission, was authorized to construct, maintain and operate a bridge over the St. Clair River, so far as the United States had jurisdiction over the waters of such river, at and near Port Huron, Michigan, subject to the conditions and limitations of the act approved March 23, 1906, 34 Stat. 84, 33 U.S.C.A. § 491 et seq. and subject to approval by the proper authorities of the Dominion of Canada. The act further provided that the rate of tolls to be charged should be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintenance, repair and operation of the bridge and its approaches.

The State Highway Department employed its own engineers to draw plans for the American approach to the bridge. Beginning early in 1936 and continuing through 1937, V. B. Steinbaugh, Deputy Commissioner of the Highway Department, made numerous visits to Washington, bringing with him plans and estimates of cost of constructing the approach and the facilities to be built thereon. He had conferences with L. E. Boykin and other officers of the Bureau of Public

Roads, Department of Agriculture, for the purpose of obtaining Federal aid to defray in part the cost of constructing the approach to the bridge, planned to extend from Pine Grove Avenue, in the City of Port Huron, to the west portal or anchor pier (to be located on the west bank of the St. Clair River) which was intended to be the beginning on the American side of the central span, to be later constructed by plaintiff herein and paid for out of funds raised from the sale of its bonds.

After amendments had been made by the legislature so as to render unobjectionable certain features in · Public Act No. 147, the Bureau of Public Roads agreed with the State Highway Commission to finance out of Government funds one-half the cost of constructing the American approach, which included an administration building containing office quarters for Customs and Immigration inspectors and Public Health physician; a detention room for detaining immigrants for examination; a warehouse for the storage of impounded dutiable customs goods; pens for detaining imported cattle; scales and scale house, and all other facilities that might be needed for the expeditious inspection of immigrants and customs goods at the bridge exit on the American side, or plaza as it is sometimes called.

Two separate contracts were entered into between the Government, acting through the Public Roads Administration, and the State of Michigan, acting through its State Highway Commissioner for the construction of the project "in strict compliance with said plans and specifications, which are made a part hereof." The project covered by these contracts embraced the administration building and other bridge facilities to be constructed for the Customs and Immigration Inspectors. Sec. 1(e), ·Act of June 8, 1938, 52 Stat. 633, 23 U.S.C.A. § 2. The first contract, typical of the second, was made June 8, 1938, and is set forth in some detail in finding 6.

This Project Agreement was on December 18, 1939, modified at the request of the State Highway Department, so as to increase the Federal aid contribution from $271,000 to a maximum sum of $346,500.

The total cost of the approach, extending from Pine Grove Avenue to the anchor pier on the American side, including the cost of the Administration Building and other facilities and structures built at the exit or plaza, was approximately $690,000, of which sum the Federal Government contributed and paid to the Treasurer of the State of Michigan the sum of $345,690.31 and an additional sum of $3,250, being one-half of the cost of landscaping and beautifying the plaza. Included in the total was the sum of $98,703.52, the cost of the Administration Building which was constructed at the plaza for the use and convenience of the officers and employees of the plaintiff in connection with the collection of bridge tolls as well as for the use and convenience of Customs and Immigration employees.

Section 1(e) of the act of June 8, 1938, 52 Stat. 633, 634, 23 U.S.C.A. § 2, provided as follows:

"The term 'highway' as defined in the Federal Highway Act (42 Stat. 212 [23 U.S.C.A. § 1 et seq.]), as amended and supplemented, shall be deemed to include that portion of any interstate or international bridge and the approaches thereto, the cost of which is assumed by the State highway department, including such facilities as may be required by the United States Customs and Immigration Services in connection with the operation of such bridge."

The plans submitted by the State Highway Department to the officers of the Bureau of Public Roads showed the Administration Building to be a two-story structure, the first or ground floor of which was arranged with rooms for the managers and commissioners of plaintiff, such as reception, conference rooms and those for clerks. The plans indicated that another portion of the first floor was to be set aside for storage rooms, a detention pen, a room for the medical examiner of the Public Health Service, and a room for the Board of Inquiry of the Immigration Service. The first floor also made provision for a heating plant and other mechanical equipment necessary for the operation of the structure.

The plan indicated that the entire second floor was to be divided up into various rooms for the accommodation of the chief customs inspector and his force of subordinate inspectors and clerks, and other rooms for the use of the Chief Immigration Inspector and his force of inspectors and clerks.

The second floor of the Administration Building is on a level with the elevated ramp approach. A wing to the Administration Building was indicated on the plan as a "truckloading room" and intended as a warehouse for customs goods that might be impounded or temporarily detained.

After being prepared the plans were submitted to and approved by the officials of the Federal Public Roads Administration and those of the Customs and Immigration Services.

The bridge was completed and opened for use October 10, 1938, but plaintiff made no request or demand upon anyone having authority to bind the Government for payment of rental by the Government until October 9, 1940, as set forth in finding 10. On October 21, the Commissioner of Customs to whom the request for payment of rent was sent replied that "it is only fair and equitable that such interests [state agencies] should provide the Government necessary space for Federal inspectional services," and no rental was paid. Plaintiff did not make any request or demand for rental upon the Bureau of Immigration.

In view of the facts and circumstances of this case, we are of opinion that plaintiff is not entitled to recover on the basis of an obligation or undertaking implied in fact on the part of the Government to pay rental or other compensation for the use made by its Customs and Immigration Services of space in the administrative building in question.

No obligation can be implied on the part of the Immigration Service, first, because the defendant paid half the cost of the approach and building, and no re-quest or demand for rental was made upon the Bureau at the time the financing agreements were made, or later; and, secondly, because from November 22, 1939, plaintiff was engaged in operating busses for transporting persons for hire across the bridge and the Immigration Bureau claimed for that reason that plaintiff, as such transportation agency, was legally obligated to furnish inspectional facilities. Whether this latter position was correct, we need not decide.

As to both Services we think no undertaking by the Government to pay rent for the quarters in question may be implied in fact for the reason that the Government contributed $348,940.31, being one-half of the total cost of the bridge approach, which included the cost of the necessary space for the two Services in the administration building in question and of certain landscaping. It appears reasonably clear that the act of June 8, 1938, section 1(e), supra, which had reference in part to this bridge, intended that, through such cash contribution to the cost of construction of inspectional facilities for the use of Customs and Immigration Services and of plaintiff, the Government should have the use of necessary space therein without having to pay additionally therefor. The plans for the quarters and space to be occupied and used by the two Services were drawn by plaintiff and submitted to and approved by the Government before the agreements by the Government to pay one-half of the cost of the approach and buildings were made. The Government, therefore, acquired, through such contribution to the cost, a right to use such space without further cost in the absence of an agreement to the contrary at the time.

Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.